WILLIAM MANN, by his Natural Guardian, Respond-ent, v. MISSOURI, KANSAS & TEXAS RAIL-WAY COMPANY, Appellant.

Kansas City Court of Appeals, February 4, 1907.

1. NEGLIGENCE: Minor: Discretion: Care. Though a twelve-year-old boy possesses knowledge of natural facts and laws and of the proper relation between cause and effect he still lacks discretion, thoughtfulness and judgment presumed to be an attribute of the ordinarily prudent adult and which can only come by experience and so cannot be held to the strict care to which an adult would be.

2. ———: ———: ———: Contributory Negligence: Jury. To constitute an issue of fact there must always be ground on which reasonable minds may draw different conclusions, and while the contributory negligence of a boy twelve-years old is usually a question for the jury, yet his conduct may be such as to make his act a question of law for the court; and the po-sition assumed by a twelve-year-old boy on a platform contig-uous to a railroad track is held to be negligent.

3. ———: Sleeping Boy: Contributory Negligence: Humanitarian Doctrine. Where a boy negligently went to sleep on the edge of a platform contiguous to a railroad track his conduct gave the engineer running the train no right to injure him, if in the exercise of reasonable care he could discover his peril in time to avert the danger.

4. ———: ———: ———: ———: Evidence. The evidence relat-ing to the injury of a boy who had negligently gone to sleep on the edge of a platform contiguous to a railroad track, is

reviewed and it is held that it was a question for the jury whether the engineer could by ordinary care have observed his peril in time to have checked his train or to have given warnings of its approach.

5. ———: ———: ———: ———: ———. On a trial where a boy who had negligently gone to sleep on the edge of a platform contiguous to a railroad track, sues to recover damages for injury, evidence relating to a want of repair in the tracks tending to produce the alleged injury and also as to the speed of the train passing the platform and likewise the absence of obstructions to the view are material and properly admitted.

Appeal from Vernon Circuit Court.—*Hon. Levin W. Shafer,* Judge.

AFFIRMED.

*George P. B. Jackson* for appellant.

(1) The court erred in admitting evidence offered by the plaintiff over the objection of the defendant. Gurley v. Railroad, 104 Mo. 223; Roddy v. Railroad, 104 Mo. 244; Froth v. Norcross, 111 Mo. 630; Yarnell v. Railroad, 113 Mo. 578; Barney v. Railroad, 126 Mo. 372; Fuback v. Railroad, 167 Mo. 215. (2) The court erred in refusing to sustain the defendant's demurrer to plaintiff's evidence, and also in refusing to give instruction numbered 1. The evidence clearly established that there was no negligence on the part of the defendant in the discharge of any duty to the plaintiff and that the defendant owed to the plaintiff no duty in regard to the condition of its track at the platform, nor the operation of its train while the plaintiff was asleep upon the edge of the platform as he testified he was; and that the plaintiff himself was clearly guilty of contributory negligence in exposing himself in the manner and under the circumstances which he did. Cases under point one. (3) Instruction numbered 7 should have been given because if plaintiff had the degree of intelligence and discretion required by that instruction, he was equally chargeable

with contributory negligence as though he were an adult and an adult would have been chargeable with contributory negligence under the same circumstances. Ridenhour v. Railroad, 102 Mo. 286; Lynch v. Railroad, 112 Mo. 437; Spillane v. Railroad, 135 Mo. 425; Payne v. Railroad, 106 Mo. 585; Schmidt v. Railroad, 160 Mo. 58.

*D. M. Gibson* for respondent.

(1)   The court committed no error in the giving and refusing instruction, and the case was tried on the correct theory. In support of this we select, out of a multitude of cases, the following: Guenthur v. Railroad, 108 Mo. 18; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 686; Fevoons v. Railroad, 180 Mo. 208; Heinzle v. Railroad, 182 Mo. 557; Scullin v. Railroad, 184 Mo. 707; Spencer v. Railroad, 90 Mo. App. 91; Hutchinson v. Railroad, 88 Mo. App. 376.   (2)   It is not only the duty of the operators of a railroad, to stop the train under the condition of this case but before that point is reached they should give warning signals if they have time. Baird v. Railroad, 146 Mo. 281; Klockenbrink v. Railroad, 172 Mo. 690; Artolous v. Railroad, — So. 914.   (4)   The same degree of care is not required of a minor as of an adult. Anderson v. Railroad, 161 Mo. 424.   (5)   The speed at which the train run that struck plaintiff was negligence, at common law, under the circumstance. Petty v. Railroad, 179 Mo. 674; Klockenbrink v. Railroad, 172 Mo. 690, 81 Mo. App. 359; Taylor v. Railroad, 83 Mo. 390. (6)   Instruction based on the common knowledge and experience of the jury proper. Brunk v. Telephone Co., 112 Mo. App. 628.   (7)   A party is not responsible for falling asleep, especially a boy only eleven years old. Bateman v. Insurance Co., 110 Mo. App. 447.

JOHNSON, J.—This action is to recover damages for personal injuries alleged to have been sustained in

consequence of the negligence of defendant and is here on defendant's appeal from a judgment rendered against it. No evidence was offered by defendant. The material facts adduced by plaintiff thus may be stated.

The injury occurred in the afternoon of April 1, 1903. Plaintiff, then a boy twelve years old, resided with his father who was section foreman for defendant at Ellis, a small village on defendant's railroad where no station is maintained. Trains are not scheduled to stop there, but local trains do stop on signal. Business is conducted on a plank platform adjoining the main track on the north. This platform is one hundred and eighty feet long, twelve feet wide, about one foot above the level of the track and its south line is two feet north of the north rail of the track Plaintiff, who is of average intelligence, was employed by defendant to perform certain minor tasks to aid his father in the latter's employment. He met passing trains to receive and forward his father's official mail and also attended to the switch lights at Ellis and kept the lamps replenished with oil. The supply of oil for this purpose was taken from the defendant's store at Sedalia and whenever oil was needed it was plaintiff's duty to send his oil can by local freight to Sedalia to be refilled by defendant and returned to him through the same channel. On the day he was injured, plaintiff took his empty can to the platform for the purpose of delivering it aboard a local freight train bound for Sedalia. The train was late and, during the time he was waiting, plaintiff seated himself on the edge of the platform next the main track. Becoming drowsy, he lay down on the platform, drew up his feet and fell asleep. His body extended at a right angle with the course of the platform, his feet being towards the track and close to the edge of the platform. While asleep in this position, a passenger train passed by at full speed. Plaintiff's left leg was struck between the knee and ankle by something connected with the train

and broken in two places. No one saw the injury, but there is evidence tending to show that the track was in a state of ill repair at this place and had slipped on its bed towards the platform from six to ten inches thereby causing the bodies of passenger coaches to project over the edge of the platform in passing and it is plaintiff's theory that the brace-rod of one of the coaches came so close to the surface of the platform that plaintiff's leg was caught and crushed. The train was past due and was running at the speed of thirty-five miles per hour. It approached from the west and when about half a mile distant gave one blast of the whistle. No other signal was given, nor was speed reduced. There was nothing to prevent the engineer from seeing the platform as he approached. Plaintiff's father, who appears here as guardian, testified that he was working about one and one-half miles east of Ellis and from his position could and did see the train from the time the whistle was sounded until the train passed him. As the engine went by, the fireman attracted his attention by motioning backward with his hand. Another witness who was working in a garden near the platform testified that after the engineer passed it, "He poked his head out of the window and began looking back and then he turned around like he was talking to the fireman . . . and then he poked his head out of the window again."

There is no evidence to indicate that the engineer observed the peril of plaintiff in time to have avoided the injury, but it is the contention of plaintiff that, had he been in the exercise of reasonable care with respect to watching the platform, he would have become aware of the danger to plaintiff in time to have prevented the injury either by stopping the train or by sounding the whistle. The failure to maintain a proper lookout is one of the acts of negligence pleaded. Other acts alleged on which a right of action is predicated are those involved

in permitting the track to remain out of repair and in running the train at an excessive rate of speed.

Among the defenses pleaded in the answer is that of contributory negligence. Defendant asked the court to give an instruction in the nature of a demurrer to the evidence and now urges on our consideration the questions of law thus presented.

The conduct of a boy twelve years old should not be measured by the standard of care applied to an adult because the immaturity of youth ordinarily embraces not only an imperfect knowledge of natural facts and laws and of the proper relation between cause and effect, but when possessed of these elements necessary to the exercise of reasonable care it still lacks the discretion, thoughtfulness and judgment presumed to be an attribute of the ordinarily prudent adult and which may be said to come only with experience. Thoughtlessness, impulsiveness and indifference to all but patent and imminent dangers are natural traits of childhood and must be taken into account when we come to classify the conduct of a child. [Anderson v. Railway, 161 Mo. 411; Burger v. Railway, 112 Mo. 238.]

Usually in cases of this character, the question of contributory negligence is peculiarly one of fact for the jury, but instances are numerous where children no older than plaintiff have been held guilty of contributory negligence as a matter of law and it may be stated as a rule, that where after making all due allowances for the imperfections and weaknesses of youth a given act is such that all reasonable minds should concur in regarding it as an excess, even in one of the years and apparent intelligence of the actor, courts should not hesitate to treat its classification as a matter of law. To constitute an issue of fact, there always must be ground on which reasonable minds may draw different conclusions from the facts and circumstances in evidence. Where there is no room for the entertainment of a reasonable dif-

ference of opinion among the triers of fact there is no issue of fact.

Plaintiff had been performing the duties of his employment for six months or more, was familiar with the locality and the movement of trains, knew that the passenger train was overdue and was likely to appear at any moment. He admits he knew that his position on the platform was within the sphere of danger should a train pass while he slept, yet he deliberately assumed that position and drifted into slumber. We are aware that dangers not visible or imminent but which are sure to come do not always impress themselves on the youthful mind as they do on that of an adult and that sleep overpowers the senses more quickly and completely in youth than in maturity, but plaintiff fully appreciated the certain peril of his position and, so far as the care exhibited by him is concerned, as well might he have gone to sleep in the middle of the track. Obviously, his act was too careless for a boy of his age and understanding and we must find him guilty in law of negligence. [Payne v. Railroad, 136 Mo. 562, and cases cited.]

His own negligence precludes a recovery on any of the grounds of negligence alleged except those which may involve a breach on the part of defendant of its humanitarian duty. Although plaintiff negligently exposed himself to injury, his conduct gave the servants of defendant who were running the engine no right to injure him and, if, in the exercise of reasonable care, they should have discovered his peril in time to have enabled them to avert the injury, defendant will not be relieved of liability because plaintiff negligently encountered that peril. [Cole v. Railway, 121 Mo. App. 605.]

The facts that plaintiff was lying asleep on the platform in a place of danger; that it was daytime and the view of the platform from the approaching engine was entirely unobstructed; and that the train bore down on plaintiff without checking speed or sounding an

alarm, are sufficient in themselves to support a reasonable inference of negligence on the part of the engineer. There is no evidence tending to show that either of defendant's servants had actual knowledge of the existence of plaintiff's danger until the blow was struck, but the facts mentioned do justify us in saying that it was for the jury to determine whether or not the injury could have been avoided had the proper lookout been maintained. Although this was a small village at which the train was not scheduled to stop and the engineer was not required to observe the degree of vigilance necessary in passing through a populous place, yet his duty to his employer required him to observe the platform for a signal to stop. He knew that persons, including the plaintiff, might be on the platform, not as trespassers but as persons having a right to be there, and therefore it was his duty to give that place closer attention than that which should be given places where people had no right to be. He also must be presumed to have known of the bad condition of the track which extended the striking range of a passing train over the edge of the platform and that an object the size of plaintiff's recumbent body was in danger of being struck. The very fact that such object was lying on the platform close to the edge thereof and in plain view called for more than casual notice, and it is fair to conclude that a reasonable exercise of attention would have disclosed the fact that it was the body of a person, who was oblivious to his danger, in time at least to have enabled the engineer to have given warning blasts of the whistle.

The situation differs in essential particulars from that presented in the case of Bennett v. Railroad, — Mo. App. — recently decided by this court. There, we said there was nothing in the appearance of the plaintiff to attract attention to his peril until it was too late to avoid the injury by stopping the car. Warning signals were given, but they were unavailing owing to the deaf-

ness of plaintiff. We held that there must be something in the appearance of the endangered person to indicate that he is oblivious to his danger before any duty can arise under the humanitarian principle, but, as in the present case, to see a boy lying motionless on the platform in a place of danger while the train was rapidly nearing him should have suggested to the engineer that he was unconscious of his peril. At least it was for the jury to determine whether he should have thought of the danger in time to have stopped the train or to have given plaintiff the benefit of warning signals. The demurrer to the evidence was properly overruled.

Certain objections are urged to the rulings of the learned trial judge in the admission of evidence.

Defendant is right in saying that the engineer was not required to anticipate that anyone would be sleeping on the platform and that defendant owed plaintiff no duty with respect to the maintenance of its track in proper repair or with respect to the speed at which it ran the train past the platform. But, as we have shown, its servants were duty bound to look for persons on the platform and on discovering one in imminent and unconscious peril to make a reasonable effort to avoid injuring him. Evidence of the condition of the track was admissible because it tended to show the extension of the sphere of danger over a part of the platform occupied by plaintiff. Evidence of the manner in which the train was run by the platform and of the absence of obstructions to view was material because of the direct bearing of those facts on the questions of the reasonableness of the apparent failure of the engineer and fireman to discover the peril of plaintiff.

In the instructions given on behalf of plaintiff no other issues were submitted than those involved in a breach of the humanitarian duty and these were the only issues that should have been sent to the jury. We find no error in these instructions. Nor do we find any er-

ror in the refusal of instructions asked by defendant. The specific points made by defendant on the instructions are sufficiently answered in the views expressed. The case was fairly tried and accordingly the judgment is affirmed. *Ellison J.,* concurs; *Broaddus, P. J.,* dissents.