## Elaine Dann, Appellee, v. Jerome Gumbiner, Appellant.

### Gen. No. 48,203.

First District, First Division.

March 6, 1961.

Hubbard, Hubbard & Dorgan, of Chicago, for appellant.

David Chaimovitz, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant appeals from an order denying his petition to vacate a $25,000 default judgment. The petition, based on section 72 of the Civil Practice Act, was filed four months after judgment and term time. Defendant also appeals from an order striking his post-judgment interrogatory, requesting disclosure of the name and address of the court reporter who was present and recorded the ex parte proceedings.

On August 15, 1958, plaintiff was hit by a golf ball driven by defendant, who had been playing golf immediately behind her. Defendant had a public liability insurance policy written by the Rochester American Insurance Co. The company made an investigation and received a medical report from plaintiff's doctor. The claim was not settled because of the amount she demanded.

On September 16, 1959, plaintiff filed suit for $100,-000. The complaint substantially alleges that plaintiff was putting on the ninth green, and defendant deliberately and negligently hit a ball toward the ninth green without warning or giving plaintiff a chance to get into a place of safety, and that the ball struck her violently on the hip, causing permanent injury. Defendant was served with summons on September 21, 1959, and was defaulted on December 1, 1959. An ex parte judgment was entered on January 25, 1960.

On May 18, 1960, defendant filed his petition and supporting affidavit to vacate the judgment. The petition in substance alleges that plaintiff was out of defendant's line of flight and was half-way to the clubhouse when she was struck by defendant's unintentionally deflected ball; that defendant had an insurance policy of Rochester American Insurance Co., purchased through Arthur S. Schwartz & Co., brokers, which covered the claim of plaintiff; that after service of summons, he immediately mailed it to Schwartz & Co., and subsequently, on two occasions, verified its receipt by them, and was told that the matter was taken care of; that on September 22 or 23, 1959, Schwartz & Co. mailed the summons to Rochester American, and that "the said summons was either lost in the mail at Arthur S. Schwartz & Co. or was lost in the mails"; and that he did not know of the default judgment until May 4, 1960, when he was served with a writ of execution.

In support of the petition is an affidavit of the Claims Superintendent of Rochester American, in which he states that all summonses or notices of suits filed against policyholders come to his attention; that Rochester American received notice of the occurrence and investigated it; that neither he nor Rochester American were notified of the suit until May 4, 1960, when plaintiff's attorney telephoned their supervisor and informed him of the default judgment; that on May 4, 5 and 6, he had telephone conversations with plaintiff's attorney and informed him they had no knowledge of the suit and had never received the summons; that he inquired of plaintiff's attorney why they were not notified of the default, and the attorney "stated that he had not given any such notice on the express instructions of claimant Elaine Dann." The affidavit includes a copy of a letter from plaintiff's attending physician, dated February 11, 1959, stating

378

the objective findings were "Weakness of the left lower extremity, with deep tenderness over the left hip"; and that an x-ray showed no bones broken, and plaintiff was referred to another doctor for further treatment.

The trial judge considered the petition at length and reviewed his trial notes. Because plaintiff withheld the ordering of an execution and the placing of it for service until after term time, the court stated that the matter was being considered "as if the motion had been made within term time." After commenting on plaintiff's evidence, her injuries, defendant's conduct on the golf course and the negligence of the insurance company in the handling of the summons, the court denied the petition.

█ The principal question is whether the petition and its supporting affidavit, not denied and therefore taken as true, adequately set forth sufficient facts to show that the trial court abused its discretion in denying the petition.

█ Motions to vacate default judgments, made within term time, have developed a number of basic rules. The motion or petition should show a meritorious defense and a reasonable excuse for not having made that defense in due time. (Hitchcock v. Herzer (1878), 90 Ill. 543; Nitsche v. City of Chicago (1917), 280 Ill. 268, 270, 271, 117 N. E. 500.) The object is that justice be done between the parties, and one party is not permitted to obtain and retain an unjust advantage. The result obtained from the application of these rules depends upon the facts to which they are applied. The motion is addressed to the sound legal discretion of the court, and it is only when there is an abuse of discretion that a reviewing court will interfere. (McMurray v. Peabody Coal Co. (1917), 281 Ill. 218, 223, 118 N. E. 29.) Courts in this state are liberal in setting aside defaults during the term time

in which they are entered, when it appears justice will be promoted. (City of Moline v. Chicago, B. & Q. Ry. Co. (1914), 262 Ill. 52, 65, 104 N. E. 204; Dalton v. Alexander (1956), 10 Ill. App.2d 273, 135 N.E.2d 101.) "The power to set aside a default and permit a defendant to have his day in court is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and the furtherance of justice." Busser v. Noble (1956), 8 Ill. App.2d 268, 283, 131 N.E.2d 637.

Since Ellman v. DeRuiter (1952), 412 Ill. 285, 106 N.E.2d 350, we believe the pattern of liberality in vacating default judgments in term time has been definitely expanded to include proceedings brought under section 72 [Ill Rev Stats 1959, c 110, § 72], to set aside default judgments entered more than 30 days prior to the filing of the petition to vacate such judgments. "All prior decisions relating to proceedings of this character must now be reconsidered in the light of Ellman v. DeRuiter." (Lichter v. Scher (1955), 4 Ill. App.2d 37, 39, 123 N.E.2d 161; Paramount Paper Tube Corp. v. Capitol Engineering & Manufacturing Co. (1956), 11 Ill. App.2d 456, 138 N.E.2d 81; Jansma Transport, Inc. v. Torino Baking Co. (1960), 27 Ill. App.2d 347, 169 N.E.2d 829; Boyle v. Veterans Hauling Line (1961) (First District), No. 48096. Stability of judgments must be preserved, but with the increase in litigation, mistakes are bound to occur, and "co-operation within the profession is imperative." (Jansma Transport, Inc. v. Torino Baking Co., 27 Ill. App.2d 347, 355, 169 N.E.2d 829.) The petition may be "addressed to the equitable powers of the court, when the exercise of such power is necessary to prevent injustice." (Ellman v. DeRuiter, 412 Ill. 285, 292, 106 N.E.2d 350.) We believe authorities such as Gustafson v. Lundquist (1948), 334 Ill. App. 287, 79 N.E.2d 306, and Chmielewski v. Marich (1954), 2 Ill.2d

568, 119 N.E.2d 247, must be considered in the light of Ellman v. DeRuiter, and equitable principles must be applied to post-judgment remedies, when "necessary to prevent injustice."

 As in petitions filed within term time, the after term time petition and supporting affidavit must adequately set forth sufficient facts to show a meritorious defense and due diligence, and that the trial court abused its discretion in denying the petition. A showing of a meritorious defense alone is not sufficient. Till v. Kara (1959), 22 Ill. App.2d 502, 509, 161 N.E.2d 363.

 Defendant's petition shows that plaintiff had left the ninth green; defendant then called out "fore" and proceeded to make an iron shot in the direction of the ninth green. In striking the golf ball, he unintentionally deflected it so that it did not go in the direction intended by defendant but rose some 14 or 16 feet in the air, off to the side of the green, and coming down grazed the plaintiff in the fleshy part of her buttock. "At the time the ball grazed plaintiff, she was at a point some 20 feet from the nearest portion of the ninth green and at or near path that leads from the ninth green to the club house situated at said golf course." The risk of being hit by a golf ball on a golf course has been termed to be a risk assumed by playing. (Boynton v. Ryan (1958), 257 F.2d 70.) "No presumption of negligence arises from the mere fact that a player on a golf course is hit by a ball driven by another player." (Hampson v. Simon (1952), 345 Ill. App. 582, 584, 104 N.E.2d 112.) Defendant asserts that plaintiff "did not sustain any injury other than a very slight bruise on the fleshy part of her buttock," and this statement seems to be supported by the letter of her physician sent to Rochester American. We think the petition shows a meritorious defense to the action.

381

■ Defendant, when served with summons, immediately sent it to his insurance broker, twice verified its receipt, and received assurance that the matter would be taken care of. There is nothing in the record to refute the statement that the broker, within a day or two, mailed it to Rochester American, and that it was never received by it. Mailing is recognized as a means of serving and transmitting suit papers. (Illinois Supreme Court Rule 7(2)(c); Uniform Rules for Circuit Court and Superior Court of Cook County, Part 2.1(d).) We believe there is a showing of reasonable diligence.

■ The court was not informed at the ex parte hearing of the negotiations between plaintiff and Rochester American, although the post-judgment conduct of plaintiff indicates she expected the insurance company to pay any judgment entered for her. There is no rule which requires a successful litigant or counsel to place an execution for service, and thereby inform a defendant of a default judgment within term time or any other time. However, when service of an execution is delayed four months after term time, and if a plaintiff directs that notice of the default be withheld from defendant or his insurance company with whom she had been negotiating her claim, we believe "a cloud" is cast upon the whole proceedings, which the court should consider when appraising the merits of the petition to vacate. Jansma Transport, Inc. v. Torino Baking Co., 27 Ill. App.2d 347, 355, 169 N.E. 2d 829.

We believe the petition and its supporting affidavit sufficiently presented to the trial court a situation which was addressed to the equitable powers of the court and required the exercise of such powers in order to prevent injustice. We think defendant should have been given an opportunity to defend in this action. Jansma Transport, Inc. v. Torino Baking Co., 27 Ill. App.2d 347, 354, 355, 169 N.E.2d 829.

Considering the view we take of this appeal, it is unnecessary to determine the correctness of the order of the trial judge denying defendant's interrogatory seeking disclosure of the name and address of the court reporter who recorded the ex parte proceedings.

We conclude that facts were presented by the petition which, if known, ought to have prevented the trial judge from entering the default judgment, and as a showing of reasonable diligence and a meritorious defense was presented, the trial court, in the exercise of sound discretion, should have allowed the petition of defendant in order to permit a trial on the merits.

The judgment is hereby reversed and the cause remanded with directions to vacate the default order and permit defendant to answer.

Reversed and remanded with directions.

KILEY, P. J., and BURMAN, J., concur.